Joel KRONFELD, Plaintiff,

v.

TRANS WORLD AIRLINES, INC.;
Trans World Corporation,
Defendants.

No. 83 Civ. 8641.

United States District Court,
S.D. New York.

Dec. 7, 1984.

Pomerantz, Levy, Haudek, Block & Grossman; Harvey Greenfield, New York City, for plaintiff; Stanley M. Grossman, Marc I. Gross, Laurence D. Paskowitz, New York City, of counsel.

Hughes, Hubbard & Reed, New York City, for defendants; Robert J. Sisk, Laura H. Allen, Janice B. Stanton, New York City, of counsel.

## OPINION

EDWARD WEINFELD, District Judge.

Plaintiff moves for certification of this action as a class action pursuant to Rule 23, Fed.R.Civ.P. Plaintiff's claims arise out of an offering by defendant Trans World Airlines, Inc. ("TWA") of $100,000,-000 of $2.25 cumulative convertible pre-

ferred stock on July 29, 1983, 200 shares of which were purchased on that date by plaintiff, Joel Kronfeld ("Kronfeld"). Plaintiff alleges that the prospectus and registration statement issued in connection with the July 29, 1983 offering failed to disclose plans by TWA's parent, defendant Trans World Corporation ("TWC"), to spin off its airline subsidiary, an alleged "about face" from a previous position. Plaintiff seeks recovery on behalf of all persons who purchased the $2.25 cumulative convertible preferred stock offered by TWA between the date of the offering and the date of disclosure of the spin off, based on the common claim that TWA's failure to disclose the intended spin off violated Sections 11 and 12(2) of the Securities Act of 1933,[1] Section 10(b) of the Securities Exchange Act of 1934, and Rule 10b–5 as promulgated thereunder.[2]

Defendants oppose the class certification motion because (1) plaintiff's claims and the defenses thereto are atypical of those of the class; (2) he is an inadequate class representative whose credibility has been impaired; and (3) his counsel have not demonstrated they will adequately and fairly represent the putative class.

### CLASS CERTIFICATION

In this case there can be no dispute concerning the numerosity of the class or the existence of common issues of law and fact. Defendants' opposition to this class certification motion centers in the main about plaintiff Kronfeld.

■ Initially, defendants attack Kronfeld's adequacy as a class representative on grounds that he has evidenced a lack of credibility. The defendants claim that plaintiff's credibility is subject to attack upon cross examination on a trial because of alleged inconsistencies between his deposition testimony and statements contained in other documents filed in this action.

While some of these alleged matters may properly be inquired into upon a trial to show the claimed inconsistencies, they hardly serve to disqualify plaintiff as a class representative. They are not of such a nature as to unduly burden the class by diverting attention from the substance of the basic claim advanced on behalf of the class.[3]

■ Defendants' primary argument against class certification is based on the contention that plaintiff's individual situation forecloses his active participation in the litigation. It rests upon the fact that until recently, plaintiff, who is a dual United States/Israeli citizen with a residence in New York as well as Israel, has resided for approximately ten years in Israel where he is a professor of geophysics at Tel Aviv University. He has also served from time to time as a private oil consultant in Israel and in other countries, such as South Africa. Defendants claim that Kronfeld is a "puppet" plaintiff, stressing in particular, the fact that he had not spoken directly to counsel prior to his deposition in the United States until seven months after the filing of the complaint. Defendants also emphasize that plaintiff's father, Morris Kronfeld, and not the plaintiff, placed the order for the purchase of the stock; that it was plaintiff's father who obtained counsel for the purposes of instituting this suit, and who has otherwise played a significant role in the litigation up until this time.

It does not necessarily follow, however, from the facts on which defendants rely that plaintiff has been inattentive to or disregarded the litigation until this time, or that he will not personally and actively participate in the future. The defendants disregard the fact that Kronfeld's father has acted as his alter ego in the United States during his absence abroad. During that time, plaintiff has made various invest-

---

**1.** 15 U.S.C. §§ 77k, 77l(2) (1982).

**2.** 15 U.S.C. § 78j(b), 17 C.F.R. 240.10b–5 (1982).

**3.** *Cf. Panzirer v. Wolf,* 663 F.2d 365, 368 (2d Cir.1981), *vacated as moot sub nom. Price Wa-*

*terhouse v. Panzirer,* 459 U.S. 1027, 103 S.Ct. 434, 74 L.Ed.2d 594 (1982); *Kline v. Wolf,* 702 F.2d 400, 401 (2d Cir.1983); *Cohen v. Laiti,* 98 F.R.D. 581, 582–83 (E.D.N.Y.1983).

ments in the United States. When plaintiff left the United States to take up his pedagogical duties in Israel, he executed a power of attorney authorizing his father, a retired New York City school teacher, to act on his behalf in financial and legal matters. That power of attorney not only vests Morris Kronfeld with the power to invest his son's monies and to initiate litigation on his behalf, but also imposes on him the duty to take the necessary steps to protect his son's interests.

The purchase of stock here at issue was made not only pursuant to the power of attorney, but after telephone discussions between father and son, who approved the purchase. Similarly, the ultimate decision to retain counsel was that of plaintiff. He has been kept apprised of the course of the litigation through telephone calls between Israel and the United States with his father and by reviewing documents sent to him by counsel, again through his father, such as the complaint, his affidavits and motion papers.

The Court finds that whatever questions defendants have raised about plaintiff's ability to confer and to cooperate with his counsel have been substantially resolved by plaintiff's current presence in the United States. His continued presence here for the next several years while he is on sabbatical leave from Tel Aviv University will provide him ample opportunity for active participation in this litigation. The Court is persuaded by plaintiff's deposition testimony that he is far more cognizant, and capable to discharge the responsibilities of a class representative than many class plaintiffs, and by plaintiff's representations that while in the United States he will personally make himself available to counsel and cooperate with them to the extent necessary to protect the interests of the class.

Defendants also contend that Kronfeld is an inadequate representative irrespective of his former residence abroad because his Section 10(b) claim is atypical of those of the class. This contention is based again upon the fact that Kronfeld did not personally make the purchase of the stock, but relied upon his father's recommendation. However, this fact[4] does not give rise to a defense "unique" to Kronfeld, nor preclude his claim under Section 10(b) and Rule 10b–5. Reliance on third parties such as investment counselors or knowledgeable family members is likely to be typical, rather than atypical, of the circumstances under which a substantial number of class members purchased their stock.[5] Such reliance is not necessarily incompatible with a finding that the fraud was a "significant contributing cause"[6] of their injuries. Reliance on third parties does not vitiate a Section 10(b) claim,[7] at

---

**4.** Defendants also claim that Kronfeld's claims are atypical of those of the class because his purchase of additional shares after disclosure of the spin-off calls into question the materiality of the alleged omissions. Materiality, however, is judged by an objective and not a subjective standard, *see Affiliated Ute Citizens v. United States,* 406 U.S. 128, 153–54, 92 S.Ct. 1456, 1472, 31 L.Ed.2d 741 (1972). Hence, Kronfeld's subsequent purchase is irrelevant for the purposes of the materiality issue. In addition, this subsequent purchase is explained as a common investment technique used to decrease the average cost of the investment. *See Nye v. Blyth Eastman Dillon & Co.,* 588 F.2d 1189, 1195 n. 6 (8th Cir.1978).

**5.** *In re Data Access Systems Securities Litigation,* 103 F.R.D. 130 (D.N.J.1984); *Grossman v. Waste Management, Inc.,* 100 F.R.D. 781, 786–87 (N.D. Ill.1984); *Sargent v. Genesco, Inc.,* 75 F.R.D. 79, 85 (M.D.Fla.1977).

**6.** *See Wilson v. Comtech Telecommunications Corp.,* 648 F.2d 88, 92 (2d Cir.1981) ("The element of reliance serves to restrict the potentially limitless thrust of Rule 10b–5 to those situations in which there exists causation in fact.... However, the plaintiff is not required to prove that the defendant's act was the sole and exclusive cause of his injury; he need only show that it was "'substantial,' i.e., a significant contributing cause."); *Panzirer, supra,* 663 F.2d at 368 (plaintiff need not show direct reliance, but only causation in fact).

**7.** *Panzirer, supra,* 663 F.2d at 368 ("[t]he fact that plaintiff must trace her reliance on defendant's alleged fraud through the reactions of third parties does not vitiate her claim under 10b–5"); *see Grossman v. Waste Management, Inc.,* 100 F.R.D. 781, 788 (M.D.Fla.1977). The Court is aware of the ruling in *Greenspan v. Brassler,* 78 F.R.D. 130 (S.D.N.Y.1978) (plaintiff's reliance on brother vitiates 10b–5 claim),

least where the third party's advice or information reflects the market.[8] Moreover, "[r]eliance is an issue lurking in every 10b–5 action."[9] Where, as here, plaintiff seeks recovery alleging the same conduct and the same injury as do the members of the class, and where plaintiff's reliance on his father cannot be said to be atypical of the class, Rule 23(a)(3) is satisfied.[10]

The claim that plaintiff's counsel, because of lack of direct communication with plaintiff (instead of through and with the father) demonstrates that they are not vigorously prosecuting this action on behalf of the class is negated by counsel's activities thus far. The contention is so lacking in merit as not to warrant further discussion.

Finally, the record demonstrates that plaintiff is of financial capacity to meet whatever cost may be imposed upon him in this litigation. He has steady employment as a professor and consultant in his discipline and has securities valued at over $40,000; further, in connection with his sabbatical leave, he is entitled to distribution of over $46,000 in benefits.

The Court finds that plaintiff has made a sufficient showing of the adequacy of his representation to warrant class certification at this time. If at any time during the course of the litigation, it is contended, however, that plaintiff is not performing his duties adequately, an appropriate remedy is available pursuant to Rules 23(c) or 23(d), Fed.R.Civ.P.

Having determined that plaintiff's representation satisfies the dictates of Rule 23(a)

in terms of adequacy of representation and typicality of claims, and that common questions of law and fact predominate over questions affecting only individual class members, the Court certifies the following class pursuant to Rule 23(b)(3), Fed.R. Civ.P.:

> All persons who purchased $2.25 Cumulative Convertible Preferred stock of Trans World Airlines, Inc. between July 29, 1983 and September 27, 1983, inclusive, excluding defendants, defendants' employees and members of their immediate families.

Plaintiff's motion for class certification is granted upon notice to the members of the class as provided for in the order to be entered herein.

### DEFENDANTS' MOTION FOR ATTORNEYS' FEES AND COSTS

■ Defendants move, pursuant to Rules 37(d) and 11, Fed.R.Civ.P., to recover their costs and attorneys' fees in seeking to depose plaintiff Kronfeld, as well as the cost of providing plaintiff with air fare to the United States for the taking of his deposition. Defendants seek to assess these costs against plaintiff and plaintiff's attorneys who opposed the motion to depose the plaintiff.

The matter must be considered in proper context. The defendants sought to take plaintiff's deposition in the early stages of this litigation, at which time plaintiff was in Israel. They moved, pursuant to Rule 37(a), for an order compelling plaintiff to

---

which appears in conflict with our Court of Appeals' decision in *Panzirer, supra*, 663 F.2d at 368.

**8.** It should be noted that defendants present no evidence that the third party relied upon by plaintiff, in turn relied on factors "wholly extraneous to the market." *See Grossman v. Waste Management, Inc.*, 100 F.R.D. 781, 788 (N.D.Ill. 1984). The Court makes no determination on the merits of plaintiff's claim, but only addresses these questions to determine whether there is a defense unique to plaintiff which will prejudice the claims of the class.

**9.** *Green v. Wolf Corp.*, 406 F.2d 291, 301 (2d Cir.1968), *cert. denied*, 395 U.S. 977, 89 S.Ct. 2131, 23 L.Ed.2d 766 (1969).

**10.** *In re Data Access Systems Securities Litigation*, 103 F.R.D. 130 (D.N.J.1984); *see Grossman v. Waste Management, Inc.*, 100 F.R.D. 781, 788 (N.D.Ill.1984); *Dura-Bilt Corp. v. Chase Manhattan Corp.*, 89 F.R.D. 87, 99 (S.D.N.Y.1981) (typicality requirement of Rule 23 is satisfied where the plaintiff's claims arise from the same event or course of conduct as do the class members' claims); *accord Somerville v. Major Exploration, Inc.*, [1984] Fed.Sec.L.Rep. (CCH) ¶ 91,473 at 98,369 (S.D.N.Y.1984); *see generally General Telephone Co. v. Falcon*, 457 U.S. 147, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982).

appear in New York to testify by oral deposition, or alternatively at Tel Aviv, Israel, with plaintiff to bear the expense of one attorney for defendants, including a reasonable counsel fee; and staying plaintiff's discovery and all proceedings in this action until plaintiff's oral deposition was taken.

Plaintiff's counsel at that time opposed the motion upon the ground that the relevant information could be obtained from plaintiff by written interrogatories which in their view was an accepted procedure.[11] Plaintiff himself submitted an affidavit urging acceptance of that procedure. However, defense counsel, as indeed was their right, pressed for an oral deposition of plaintiff either in New York City or in Israel. Indeed, defendants were not unaware of the inconvenience and expense faced by plaintiff and to their credit stated their willingness "to make every effort to minimize any inconvenience and expense to plaintiff that appearing for an oral deposition may entail.... [I]f plaintiff will appear in New York, we will conduct the deposition during any weekend, holiday or vacation period convenient to plaintiff.... Furthermore, defendants would be willing to fly plaintiff from Tel Aviv to New York and back free of charge on any regularly scheduled TWA flight." [12]

The proposal was repeated upon oral argument, whereupon the Court made the following disposition:

Defendants' motion to compel the taking of plaintiff's deposition is granted. Defendants are to pay the cost of plaintiff's air travel to and from New York on Trans World Airlines if the deposition is conducted in New York. If plaintiff desires the deposition to be taken in Israel, he is to pay the defendants' expenses, including reasonable counsel fees.

Pursuant thereto plaintiff was flown to the United States on a TWA plane and testified here. Now upon a contention that at his deposition plaintiff testified he had been willing to appear here for deposition and had been planning to return to the United States, defendants charge that plaintiff's counsel was unjustified in his opposition to the motion and in urging the use of interrogatories. The defendants' motion to assess upon plaintiff and his attorneys the air travel expense of plaintiff and reimbursement of counsel's fees is without substance and in effect defendants seek to renege on their original offer. The claim that defendants were misled because plaintiff in any event contemplated returning to the United States is a distortion of the record. No departure date had been fixed for his return and his plans with respect to appointment during his sabbatical by universities in the United States had not been finalized. There is no basis upon which it can fairly be said that the defendants were induced to offer free plane travel to plaintiff to secure his oral deposition. The offer was volunteered by them and led to the disposition indicated upon the argument of the motion.

This branch of the motion is denied.

So ordered. Submit order in accordance with the foregoing.

---

**11.** *See, e.g., Shelter Realty Corp. v. Allied Maintenance Corp.,* Order, 76 Civ. 341 (S.D.N.Y. Aug. 16, 1976).

**12.** Reply Memorandum In Support of Defendants' Motion to Compel Plaintiff's Oral Deposition at 2.