**Marc A. BENZING, on behalf of himself and all others similarly situated, Plaintiff–Appellant,**

v.

**FARMERS INSURANCE EXCHANGE, an insurer and owner of Mid–Century Insurance Company; and Mid–Century Insurance Company, a California corporation, Defendants–Appellees.**

No. 05CA1633.

Colorado Court of Appeals, Div. III.

March 22, 2007.

As Modified on Denial of Rehearing

---

* Sitting by assignment of the Chief Justice under

provisions of Colo. Const. art. VI, § 5(3), and

May 17, 2007.*

Certiorari Granted Feb. 19, 2008.

§ 24–51–1105, C.R.S.2006.

* Nieto, J., would grant.

The Carey Law Firm, Robert B. Carey, L. Dan Rector, Leif Garrison, Colorado Springs, Colorado, for Plaintiff–Appellant.

Davis Graham & Stubbs, LLP, Thomas P. Johnson, Janette L. Ferguson, Denver, Colorado, for Defendants–Appellees.

Opinion by Judge WEBB.

In this putative class action concerning nondisclosure in the sale by defendants, Farmers Insurance Exchange and Mid–Century Insurance Company, of uninsured/underinsured motorist (UM/UIM) coverage, plaintiff, Marc A. Benzing, appeals the trial court order decertifying the class. We conclude that the trial court abused its discretion. Therefore, we reverse and remand for further proceedings as a class action.

## I. Background

After the decision in *DeHerrera v. Sentry Insurance Co.*, 30 P.3d 167 (Colo.2001), plaintiff, who was insured by Farmers, purchased insurance that included UM/UIM coverage on a second vehicle. He brought this action alleging that defendants had sold UM/UIM coverage using deceptive trade practices by failing to disclose that *DeHerrera* required UM/UIM coverage to follow the insured rather than the insured's vehicle, and thus insureds had no reason to purchase UM/UIM coverage in policies insuring additional vehicles. Based on claims for declaratory relief, breach of contract, breach of the covenant of good faith and fair dealing, bad faith, and violation of the Colorado Consumer Protection Act (CCPA), § 6–1–101, et seq., C.R.S. 2006, he sought a full refund of premiums paid for this coverage by him and members of the putative class.

On plaintiff's motion for class certification, the trial court found that he had satisfied the requirements of C.R.C.P. 23(a) and (b)(1)-(3). The court accepted as true his allegation that "the Defendants continued to sell multiple policies, all including UM/UIM coverage, without disclosing to the policy holder that the additional UM/UIM coverage provided no meaningful benefit to the purchaser." It certified a class of "those persons who, subsequent to the Colorado Supreme Court opinion in *DeHerrera* [*supra* ], purchased or renewed multiple policies from the Defendants which included [UM/UIM] coverage."

Following discovery, defendants moved to decertify the class, alleging that (1) as a class representative, plaintiff could not meet the typicality and adequacy requirements, because in deposition he had testified that despite knowing of *DeHerrera,* he would choose UM/UIM coverage on a second vehicle which protected guests and nonresident family members; (2) individual issues predominated over those issues common to the class members, because insureds obtained some benefit from including UM/UIM coverage on policies insuring additional vehicles that protected guests and nonresident family members, and thus nondisclosure of *DeHerrera* probably had not affected most insureds' decisions to purchase such coverage; and (3) the claims for declaratory and injunctive relief were moot, because defendants now disclose the *DeHerrera* holding.

In opposing the motion to decertify, plaintiff reiterated his initial position that under *Mangone v. U–Haul International, Inc.*, 7 P.3d 189, 191 (Colo.App.1999), damages were "those amounts paid for the UM/UIM coverage," but he also asserted an alternative causation and damage theory: "[E]ven if this approach isn't accepted, the parties can put on evidence as to the value of the coverage actually sold." He asserted that he and the putative class "were duped into paying more than they would have paid had the market been fully informed of the [UM/UIM] product's worth." According to plaintiff, such damages could be established by expert testimony. On appeal, plaintiff elaborated on this theory, which he characterizes as "fraud on the market."

The trial court, with a different judge now presiding, decertified the class. The second judge found that (1) plaintiff could no longer sustain his burden for class certification under C.R.C.P. 23(a)(3) or (4); (2) plaintiff did not dispute that meaningful benefits in terms of coverage for guests and nonresident fami-

ly members inured to persons who purchased UM/UIM coverage on additional vehicles; (3) defendants had now complied with *DeHerrera* and state insurance directives regarding disclosure; (4) the overwhelming majority of consumers purchasing insurance with proper disclosure of *DeHerrera* still elected to purchase UM/UIM coverage on additional vehicles; (5) sorting out class members who are entitled to damages from those who are not would be an impossible task; (6) common issues do not predominate; and (7) substitution of another plaintiff as a class representative would not render the lawsuit a proper class action. Plaintiff appeals this order.

## II. Law

■ Whether to certify a class action lies within the discretion of the trial court, and its decision will not be disturbed absent an abuse of that discretion. *Medina v. Conseco Annuity Assurance Co.*, 121 P.3d 345, 347 (Colo.App.2005). An abuse of discretion occurs when the trial court's decision is manifestly arbitrary, unreasonable, or unfair. *Friends of Chamber Music v. City & County of Denver*, 696 P.2d 309, 317 (Colo.1985). Misapplication of the law and factual findings manifestly against the weight of the evidence constitute abuses of discretion. *See Medina v. Conseco Annuity Assurance Co., supra; Hytken v. Wake*, 68 P.3d 508, 511 (Colo.App. 2002).

■ Certification of a class action is governed by C.R.C.P. 23, and the plaintiff has the burden of proving compliance with that rule. *Medina v. Conseco Annuity Assurance Co., supra.* C.R.C.P. 23(a) provides:

One or more members of a class may sue or be sued as representative parties on behalf of all only if: (1) The class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

If the requirements of C.R.C.P. 23(a) are satisfied, the action must also meet one of the subsections of C.R.C.P. 23(b). Here, for the reasons discussed in section IV below, we focus primarily on C.R.C.P. 23(b)(3), which requires that "[t]he court find[ ] that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy."

■ Although a court must not decide the merits of the case when determining whether to grant class certification, the substantive claims and defenses of the parties and the essential elements of those claims and defenses may be considered. *See Klay v. Humana, Inc.*, 382 F.3d 1241 (11th Cir.2004); *Joseph v. Gen. Motors Corp.*, 109 F.R.D. 635 (D.Colo.1986). Courts often focus on whether a common nucleus of operative fact exists. *See, e.g., Joseph v. Gen. Motors Corp., supra,* 109 F.R.D. at 640; *Medina v. Conseco Annuity Assurance Co., supra,* 121 P.3d at 348.

## III. Class Decertification

Plaintiff contends the second judge erred in decertifying the class. We agree.

### A. Standard of Review on Decertification

The parties dispute the standard of review, but they have cited no Colorado authority, nor have we found any, addressing whether the abuse of discretion standard applies equally to decertification. Given the similarities between C.R.C.P. 23 and Fed.R.Civ.P. 23, we look to the federal law for guidance. *Goebel v. Colo. Dep't of Insts.*, 764 P.2d 785, 794 (Colo.1988); *Medina v. Conseco Annuity Assurance Co., supra.*

■ According to all federal circuits that have addressed the issue, because a trial court's decision to decertify a class is equivalent to a decision to deny class certification in the first instance, whether to decertify the class also lies within the trial court's discretion. *See Birmingham Steel Corp. v. Tennessee Valley Auth.*, 353 F.3d 1331, 1335 (11th Cir.2003); *Paton v. New Mexico Highlands Univ.*, 275 F.3d 1274, 1278 (10th Cir. 2002); *Pederson v. Louisiana State Univ.*, 213 F.3d 858, 866 (5th Cir.2000); *Lowery v.*

*Circuit City Stores, Inc.,* 158 F.3d 742, 757 (4th Cir.1998), *vacated on other grounds,* 527 U.S. 1031, 119 S.Ct. 2388, 144 L.Ed.2d 790 (1999); *Lusardi v. Xerox Corp.,* 975 F.2d 964, 973 (3d Cir.1992); *Rossini v. Ogilvy & Mather, Inc.,* 798 F.2d 590, 596 (2d Cir.1986); *Briggs v. Anderson,* 796 F.2d 1009, 1017 (8th Cir.1986); *Key v. Gillette Co.,* 782 F.2d 5, 6–7 (1st Cir.1986); *Hewitt v. Joyce Beverages, Inc.,* 721 F.2d 625, 627 (7th Cir.1983).

▉ In determining whether to certify a class, a court must generally accept as true the allegations in support of certification. *See, e.g., Medina v. Conseco Annuity Assurance Co., supra,* 121 P.3d at 348. The court's initial certification of a class "is inherently tentative." *Coopers & Lybrand v. Livesay,* 437 U.S. 463, 469 n. 11, 98 S.Ct. 2454, 2458, 57 L.Ed.2d 351 (1978). Hence, a court that certifies a class early in the litigation remains under a continuing obligation to review whether proceeding as a class action is appropriate, and may modify the class or vacate class certification based on evidentiary developments arising during the course of litigation. *Gen. Tel. Co. v. Falcon,* 457 U.S. 147, 160, 102 S.Ct. 2364, 2372, 72 L.Ed.2d 740 (1982); *In re Integra Realty Res., Inc.,* 354 F.3d 1246, 1261 (10th Cir.2004).

Here, plaintiff's reliance on the law of the case doctrine in arguing that decertification orders should be reviewed more stringently than certification orders is misplaced. Several federal courts have held that certification of a class does not establish the law of the case which would limit later decertification. *See Zenith Labs., Inc. v. Carter–Wallace, Inc.,* 530 F.2d 508, 512 (3d Cir.1976); *Ellis v. Elgin Riverboat Resort,* 217 F.R.D. 415, 419–20 (N.D.Ill.2003).

Further, even the federal district courts to have considered law of the case arguments acknowledge that decertification is nonetheless appropriate when the decision is based on a change in the factual or legal underpinnings of the certification order. *See, e.g., Jones v. Goord,* 435 F.Supp.2d 221, 232 (S.D.N.Y.2006); *Ellis v. Elgin Riverboat Resort, supra,* 217 F.R.D. at 419–20; *Kuenz v. Goodyear Tire & Rubber Co.,* 617 F.Supp. 11, 13 (N.D.Ohio 1985); *Sley v. Jamaica Water*

*& Utils., Inc.,* 77 F.R.D. 391, 394 (E.D.Pa. 1977).

We adopt the federal majority view and review the decertification order for abuse of discretion.

### B. Decertification Order

The second judge identified three circumstances that differed from the case as presented on the motion for class certification: (1) "meaningful benefits actually did accrue to persons who purchased additional UM/UIM coverage for their additional vehicles," because that coverage protected "non-resident family members, such as a child living outside the home, and guests in the vehicles"; (2) "it appears from statistical documents filed by Defendants that the overwhelming majority of persons purchasing insurance post-disclosure has elected to purchase UM/UIM on additional vehicles"; and (3) in deposition, plaintiff "persisted in his belief that purchasing such additional coverage was in his best interests," which differed from "the circumstances or claims of other class members who might testify that they would not have purchased additional UM/UIM coverage on additional vehicles had they known the outcome of *DeHerrera.*"

We address these factors in turn and conclude that applying the correct legal analysis, defendants presented insufficient new evidence to warrant decertification.

### 1. "Meaningful" Benefits from Additional UM/UIM Coverage

▉ The second judge contrasted the first judge's assumption that "the additional coverage provided no meaningful benefit to the purchaser" with defendants' position in moving to decertify that "meaningful benefits actually did accrue to persons who purchased additional UM/UIM coverage for their additional vehicles," which plaintiff does not dispute. We are not persuaded that defendants' position rests on any new facts.

In holding that UM/UIM coverage applies "to an insured person who purchases such coverage ... irrespective of the vehicle the injured insured occupies," the supreme court explained, "DeHerrera's son, as a resident

relative of the named insured, is a person insured under the policy." *DeHerrera, supra,* 30 P.3d at 176. The court also quoted the policy definition of "insured," which included both "that person's husband or wife if a resident of the same household" and "a member of the family who is a resident of the household and who doesn't own a car." *DeHerrera, supra,* 30 P.3d at 170.

Thus, by comparing *DeHerrera* to the UM/UIM language of their own second vehicle policies, defendants could have immediately ascertained that their policies provided "meaningful benefits" by extending coverage to nonresident family members and guests. Having identified such benefits, defendants could have made this argument in opposing class certification, which they conceded at oral argument.

Therefore, we conclude that the second judge abused his discretion by relying on defendants' "meaningful benefits" argument because it did not rest on new facts. *See Williams v. Comm'r of Internal Revenue,* 1 F.3d 502, 503 (7th Cir.1993) ("the second judge may alter previous rulings if new information convinces him that they are incorrect"); *Ellis v. Elgin Riverboat Resort, supra,* 217 F.R.D. at 419 ("Rule 23 clearly requires this Court to review the propriety of class certification in light of new evidence"); *cf. In re Harcourt Brace Jovanovich, Inc. Sec. Litig.,* 838 F.Supp. 109 (S.D.N.Y.1993) (party opposing amendment of class action certification order should show some newly discovered facts or law, and grounds offered for amendment must not be ones that could have been argued earlier but were not). Moreover, as discussed in subsection 4 below, even if considered on its merits, this argument does not preclude certification under C.R.C.P. 23(b)(3).

### 2. Statistical Evidence of UM/UIM Insurance Purchases

In support of their motion to decertify, defendants also presented under seal data from State Farm that, according to the second judge, was not available when the first judge certified the class, and plaintiff does not argue otherwise. Based on this data, the second judge concluded "not all class mem-

bers would have changed their insurance coverage in any way, even after they had been informed of *DeHerrera.*" As a matter of both fact and law, the data does not support this conclusion.

First, the conclusion is manifestly against the weight of the evidence. The second judge described defendants' data as "documents which suggest that very few of *their* insureds have chosen to cancel UM/UIM coverage" (emphasis added). However, on appeal both parties agree that the data does not involve *any* of defendants' insureds, which defendants had explained in presenting the data below.

Moreover, both parties also agree that the disclosure provided by State Farm to its insureds is not in the record. Yet, the second judge assumed that State Farm had made an adequate disclosure of *DeHerrera* ("after the rulings in *DeHerrera* and *Jaimes [v. State Farm Mut. Auto. Ins. Co.,* 53 P.3d 743 (Colo.App.2002) ] and related disclosures had been made"). But without being able to determine the adequacy of that disclosure, whether those insureds would have made other choices, if the disclosure should have been different to explain *DeHerrera,* is unknowable.

Second, the conclusion misapplies the law by improperly prejudging a merits issue in resolving class certification. Reliance and causation are elements that a plaintiff must prove at trial. *Daniel v. Am. Bd. of Emergency Med.,* 269 F.Supp.2d 159, 198 (W.D.N.Y.2003), *aff'd,* 428 F.3d 408 (2d Cir. 2005). Yet, the second judge in effect decided this issue by observing that "not all class members would have changed their insurance in any way, even after they had been informed of *DeHerrera.*"

■ Class certification cannot be denied by deciding a merits issue that must be proved at trial. *Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 177, 94 S.Ct. 2140, 2152, 40 L.Ed.2d 732 (1974) ("We find nothing in either the language or history of Rule 23 that gives a court any authority to conduct a preliminary inquiry into the merits of a suit in order to determine whether it may be maintained as a class action."); *Cook v. Rock-*

*well Int'l Corp.,* 151 F.R.D. 378, 386 (D.Colo. 1993). *See generally* Alba Conte & Herbert Newberg, *Newberg on Class Actions* § 7:9, at 32–33 (4th ed. 2002) (*Newberg* ).

Additionally, even if the data permits an inference that some class members would still have purchased UM/UIM coverage in an additional vehicle policy despite notice of *De-Herrera,* that inference would not dispose of plaintiff's alternative causation and damages theory of fraud on the market. *Cf. Eckstein v. Balcor Film Investors,* 740 F.Supp. 572, 579 (E.D.Wis.1990) ("The fraud on the market theory is based on the hypothesis that . . . the price of a company's stock is determined by the available material information regarding the company and its business. . . . Misleading statements will therefore defraud purchasers of stock even if the purchasers do not directly rely on the misstatements." (quoting *Basic Inc. v. Levinson,* 485 U.S. 224, 241–42, 108 S.Ct. 978, 989, 99 L.Ed.2d 194 (1988))).

According to plaintiff's opposition, because defendants did not tell their insureds of the very limited benefits from such coverage, he and members of the class "were duped into paying more than they would have paid had the market been fully informed of the product's worth." The opposition quoted from plaintiff's expert's report, which had been tendered along with the motion for class certification, as follows:

> By calling it "uninsured motorist coverage" and otherwise treating the two units (self/family and non-family passengers/operators) the same, Farmers has failed to disclose material information as to the characteristics and benefits of the product. . . . Clearly, Farmers has an obligation to disclose . . . information so that the consumer understands that the second unit of coverage . . . is not the same as the first unit of coverage.

As the dissent states, plaintiff's opposition did not refer to this theory as fraud on the market. Nevertheless, the second judge clearly recognized that plaintiff was no longer proceeding solely on a "total refund" theory: "Plaintiff argues . . . that, consistent with his responses in the deposition, Plaintiff might continue to buy separate UM/UIM policies, but asserts he might have found coverage cheaper from a different insurance carrier." Despite this recognition, however, the second judge made no finding explaining how defendants' data showed that properly informed consumers would still pay more to defendants for this coverage than the cost of the actual benefit received, as reflected in the market price for similar coverage available from other insurers after proper disclosure. Nor do we perceive the data as probative of the alternative causation and damage theory recognized by the second judge.

Therefore, we conclude that the second judge abused his discretion in relying on data from State Farm to decertify the class.

In so concluding, we do not resolve whether plaintiff will ultimately succeed in bringing this case within the ambit of the fraud on the market theory, which arose in connection with, and finds little recognition beyond, securities fraud cases. *See In re Synergen, Inc. Sec. Litig.,* 154 F.R.D. 265, 267 (D.Colo. 1994) ("No Colorado court has applied the fraud-on-the market theory to a negligent misrepresentation claim."); see also *Kaufman v. i-Stat Corp.,* 165 N.J. 94, 109, 754 A.2d 1188, 1196 (2000) (rejecting fraud on the market as a means of proving reliance in a common law fraud action).

Here, however, only plaintiff's CCPA claim is akin to common law fraud, and he asserts that members of the putative class might be awarded damages without regard to reliance based on evidence that defendants succeeded in overpricing the coverage by not disclosing its very limited benefits following *DeHerrera.*

For these reasons, at this stage the record is insufficiently developed concerning market sensitivity of the pricing for UM/UIM policies, which could require inquiry into the filed rate doctrine. *See Fink v. Ricoh Corp.,* 365 N.J.Super. 520, 554, 839 A.2d 942, 963 (2003) (rejecting theory in consumer fraud action on behalf of purchasers of digital camera that "the price of a product . . . is directly responsive to . . . factual concealments concerning the characteristics, features or value of a product"). Hence, at some later stage, this question may be subject to a summary motion under C.R.C.P. 56(h).

### 3. Typicality and Adequacy of Named Plaintiff

We also agree with plaintiff that the second judge abused his discretion in concluding that plaintiff no longer satisfied the typicality and adequacy requirements under C.R.C.P. 23(a)(3) and (4), as well as in not affording an opportunity for another potential class representative to intervene.

The claims or defenses of the representative plaintiff must be typical of the claims or defenses of the class. C.R.C.P. 23(a)(3). And the representative plaintiff must fairly and adequately protect the interests of the class. C.R.C.P. 23(a)(4).

■ Typicality requires that the class representative's claims reflect those of the class and that the class claims are encompassed within the representative's claims. This requirement is usually met when the same unlawful conduct was directed at or affected both the representative and the class to be represented, irrespective of some variation in fact patterns that underlie individual claims. *Ammons v. Am. Family Mut. Ins. Co.*, 897 P.2d 860, 863 (Colo.App.1995).

■ Differences in individual questions of reliance and damages generally are not grounds for refusing to permit a case to proceed as a class action. *Newberg, supra,* § 22:64, at 300; *see also Gunnells v. Healthplan Servs., Inc.*, 348 F.3d 417, 427–28 (4th Cir.2003) ("Rule 23 contains no suggestion that the necessity for individual damage determinations destroys commonality, typicality, or predominance, or otherwise forecloses class certification."); *Schwartz v. Celestial Seasonings, Inc.*, 178 F.R.D. 545, 551 (D.Colo.1998) ("Nor need the injuries complained of be identical among the class members and the class representative; only the harm complained of must be common to the class."); *Lockwood Motors, Inc. v. Gen. Motors Corp.*, 162 F.R.D. 569, 581–82 (D.Minn. 1995) ("Differences which may arise in calculating the amount of individual damages plaintiffs may have sustained will not prevent certification under Rule 23(b).").

Particularly in misrepresentation and nondisclosure cases, courts view typicality flexibly. *See, e.g., Kennedy v. Tallant*, 710 F.2d 711, 717 (11th Cir.1983) (investor who was sophisticated and did not rely on prospectus typical, although many class members were less sophisticated and did rely on the prospectus); *Kronfeld v. Trans World Airlines, Inc.*, 104 F.R.D. 50, 53 (S.D.N.Y.1984) (investor who relied on outside advice still typical).

■ Class certification may also be denied where the named plaintiff has considerations that are unique and could be dispositive. *Ammons v. Am. Family Mut. Ins. Co., supra,* 897 P.2d at 863. If the interests of the class are not in full harmony with those of the named plaintiff, he or she cannot maintain a class action on behalf of the class. *Associated Master Barbers, Local No. 115 v. Journeyman Barbers, Local No. 205*, 132 Colo. 52, 55, 285 P.2d 599, 601 (1955). Likewise, a named plaintiff is not a proper class representative if a major focus of the litigation likely will involve an arguable defense peculiar to the named plaintiff or a small subclass. *Weikel v. Tower Semiconductor Ltd.*, 183 F.R.D. 377, 392 (D.N.J.1998).

■ Where a named plaintiff has been found not to be a proper class representative, however, the court should consider remedying the problem by substituting a new class representative. *See, e.g., In re Ivan F. Boesky Sec. Litig.*, 120 F.R.D. 624, 625–26 (S.D.N.Y.1988) ("If replacement is needed, the Court may permit intervention by a new representative. If no appropriate substitute is immediately available, notice may be given to the class under Fed.R.Civ.P. 23(d)(2), soliciting intervention." (quoting *Manual for Complex Litigation*, Second § 30.15, at 216)).

■ Here, plaintiff testified in deposition that if he had the choice between purchasing UM/UIM coverage that covered his guest passengers and nonresident family members and coverage that did not, he would purchase the broader coverage. The question did not address how that coverage would be priced or whether plaintiff would pay the same premium for second-vehicle UM/UIM coverage as he had paid for first-vehicle coverage. Based on this testimony, the second judge found:

> If Defendants could convince the jury that there are benefits to be gained by purchas-

ing [UM/UIM] coverage on more than one of a family's vehicles and further that the named plaintiff, after fully understanding the ramifications of the *DeHerrera* and *Jaimes* holdings central to the instant case, persisted in his belief that purchasing such additional coverage was in his best interests, this could be devastating to the interests of the class.

In his amended complaint and in his motion for class certification, plaintiff claimed that his damages would include recovery of all premiums paid for UM/UIM coverage on more than one vehicle. In contrast, plaintiff's deposition testimony suggests that proving defendants' allegedly inadequate disclosure would not establish that he was entitled to a full refund, although class members who showed that they would not have purchased UM/UIM coverage on additional vehicles might be entitled to such a refund.

But we agree with plaintiff that his testimony does not address whether he would have paid the same price for additional vehicle UM/UIM coverage as he paid for that initial coverage, had defendants made a proper disclosure of *DeHerrera*. Under plaintiff's fraud on the market theory, the causation element common to all his claims could be established by proof of how defendants' alleged nondisclosure affected the market price for additional vehicle coverage. *See Dunn v. Borta*, 369 F.3d 421, 437 (4th Cir. 2004) (in a fraud on the market case "a plaintiff can prove causation merely by establishing that the price he paid for the security was too high on the date of sale because the defendants had artificially inflated it").

We discern nothing in the record that weighs against plaintiff being a proper representative for class members who may be entitled to a partial refund based on this theory because they would still have purchased UM/UIM coverage, but would not have paid the inflated price that the market supported because of defendants' alleged nondisclosure. Therefore, to the extent that plaintiff proceeds under this theory and remains the class representative, we do not perceive a major focus of the litigation as being that his injury from defendants' alleged nondisclosure differs from the full re-

fund to which some other class members may be entitled. Thus, we further conclude that the second judge abused his discretion by determining that plaintiff no longer satisfied the typicality requirement.

Moreover, because as explained in the following subsection, individual questions of law and fact do not predominate, we further conclude that the second judge abused his discretion in not affording an opportunity to present a new class representative, whose position would be consistent with those class members who would seek full refunds on the basis that if informed of *DeHerrera*, they would not have purchased any UM/UIM coverage on additional vehicles.

### 4. Predominance of Individual Claims

We also agree with plaintiff that the second judge abused his discretion by concluding that the questions of law or fact affecting individual members predominate over those issues common to the members of the class. This issue could be disposed of based on our earlier conclusion that defendants' "meaningful benefits" argument should not have been considered because it could have been presented at the class certification hearing. We address the merits of this issue, however, because in further proceedings the trial court will have to consider it in the context of allowing an additional class representative and protecting defendants' due process rights.

Under C.R.C.P. 23(b)(3), the court must find that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

Predominance requires a plaintiff to use common evidence without resorting to lengthy individualized inquiries. *Medina v. Conseco Annuity Assurance Co., supra*, 121 P.3d at 348 (citing *In re Polypropylene Carpet Antitrust Litig.*, 996 F.Supp. 18, 22 (N.D.Ga.1997)).

In considering predominance and whether a case should be certified, a court must engage in a fact-driven, pragmatic in-

quiry balancing judicial efficiency against the need to provide a forum for resolution of disputed losses. *Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 615, 117 S.Ct. 2231, 2246, 138 L.Ed.2d 689 (1997); *Medina v. Conseco Annuity Assurance Co., supra,* 121 P.3d at 348.

■ Here, after deciding that plaintiff could no longer sustain the certification requirements under C.R.C.P. 23(a)(3) and (4), the second judge further determined that a new class representative would not be able to sustain his or her burden under C.R.C.P. 23 because common issues do not predominate and a class action was not superior to other methods of adjudication:

> The "wrong" under *DeHerrera* as relevant here is that some insured persons would not have purchased additional [UM/UIM] coverage if they had known that one policy would have provided coverage for all additional owned vehicles. However, if the insureds would have purchased the additional policies anyway, for various reasons, they would not have been harmed by the lack of disclosure. Regardless of the theory alleged, whether breach of contract, bad faith, breach of implied covenant of fair dealing, etc., if class members were not harmed, they have no claim for recovery.

The second judge also found that "sorting out any award would constitute a major difficulty likely to be encountered in the management of the class action," due to individual circumstances of the class members:

> In short, based on individual circumstances, not all class members would have changed their insurance coverage in any way, even after they had been informed of *DeHerrera* and *Jaimes,* and therefore they would not properly be entitled to refunds, some class members might testify that they would not have purchased separate policies for any additional vehicles had they known of the holdings of those cases, and would perhaps be entitled to full refunds, and some would be properly entitled to a relief level in between, for example if they had numerous additional vehicles and only bought separate policies on some, but not all of the vehicles.

And the second judge concluded that "to sort out the class members who might be properly awarded relief from those who would not would be an impossible task for the court, based on the numbers of the class members." In our view, the second judge misapplied the law, especially from the perspective of plaintiff's alternative causation and damages theory of fraud on the market.

First, defendants' alleged failure to disclose *DeHerrera*—the liability issue—can be established on a classwide basis because everyone in the putative class bore the same relationship to defendants concerning their duty to disclose. *See Seiffer v. Topsy's Int'l, Inc.,* 64 F.R.D. 714, 718 (D.Kan.1974)("a fraud perpetrated on numerous persons by the use of similar misrepresentations is an appealing situation for a class action"); *see also* Fed.R.Civ.P. 23 1966 amendment advisory committee note. On appeal, defendants do not contend otherwise.

Second, and assuming plaintiff can meet his burden of proving liability, the causation issue would involve only two categories: insureds who would not have purchased UM/UIM coverage at all and insureds who would have purchased this coverage, but at the fair market price, rather than at a market price distorted by defendants' alleged nondisclosure. *See Dunn v. Borta, supra; Eckstein v. Balcor Film Investors, supra.*

Third, the damages issue also would involve only those same two categories: the former group will seek a full refund and the latter group will seek a partial refund. The amount of the full refund should be determinable from defendants' records of premiums actually paid. Such records would also resolve the second judge's concern over insureds who bought UM/UIM coverage "on some, but not all of the vehicles."

As suggested in his opposition, plaintiff can seek to establish the amount of the partial refund by expert testimony concerning the market value of the limited additional coverage for guests and nonresident family members after proper disclosure of *DeHerrera,* again assuming that plaintiff meets his burden of proving a fraud on the market. *See Dunn v. Borta, supra; Eckstein v. Balcor Film Investors, supra.* In the absence of

adequate market data, this amount might also be proved through actuarial analysis of payments made by defendants on claims for injuries to guests and nonresident family members.

Using this three-step model, the primary individualized inquiry would be class members' admittedly self-serving assertion that they would not have purchased any UM/UIM coverage had defendants provided proper disclosure. Courts commonly deal with such inquiries by having each class member provide information on a claim form requested by the parties. *See Newberg, supra,* app. 7, at 393 (claim form requesting details on lost promotions). Here, for example, defendants might request information such as the number of nonresident family members living in the household and the frequency of guest passengers. Defendants might also ask whether the class member has been paid on a claim under an additional vehicle UM/UIM policy, which defendants assert would preclude any refunds on equitable grounds. Consistent with their due process rights, defendants could then challenge claims by cross-examining claimants in special master proceedings or seeking summary judgment as to all claimants who had been paid under an additional vehicle UM/UIM policy. *See Olden v. LaFarge Corp.,* 383 F.3d 495, 509 (6th Cir.2004) (trial court "can bifurcate the issue of liability from the issue of damages, and if liability is found, the issue of damages can be decided by a special master or by another method").

Therefore, we conclude that the second judge abused his discretion by decertifying under C.R.C.P. 23(b)(3) on the ground that the questions of law or fact affecting individual members would predominate over those issues common to the members of the class.

### IV. Other Bases for Proceeding as a Class Action

Plaintiff also contends the second judge abused his discretion by determining that certification was no longer proper under C.R.C.P. 23(b)(2) because defendants have now adequately disclosed the necessary information pursuant to *DeHerrera.* We do not consider the merits of this argument

because it was raised on appeal for the first time in plaintiff's reply brief. *See Rocky Mountain Animal Def. v. Colo. Div. of Wildlife,* 100 P.3d 508, 520 (Colo.App.2004).

Hence, further consideration of this issue on remand, if any, would be limited by the law of the case doctrine. *See Vashone–Caruso v. Suthers,* 29 P.3d 339, 342 (Colo.App. 2001) (in its discretion, a court may revisit its prior ruling in the case "if it determines that the previous decision is no longer sound because of changed conditions or law, or legal or factual error, or if the prior decision would result in manifest injustice").

Although plaintiff makes no separate argument on appeal concerning certification under C.R.C.P. 23(b)(1), we note some ambiguity in the record. On the one hand, the first judge certified the class under all three subsections of C.R.C.P. 23(b). On the other hand, the second judge decertified the class, but made no mention of C.R.C.P. 23(b)(1). Because plaintiff has not raised C.R.C.P. 23(b)(1), we conclude that further consideration of this issue on remand, if any, would also be limited by the law of the case doctrine.

### V. Certification of Subclasses

Plaintiff finally contends the second judge abused his discretion by not invoking C.R.C.P. 23(c)(4)(B) and dividing the putative class into subclasses. Defendants respond that plaintiff did not preserve this issue below because he mentioned it in his opposition only in a footnote.

We need not resolve this issue because the necessity for subclasses, if any, should be considered after the trial court affords an opportunity to identify a new class representative, when the court uses "its powers under C.R.C.P. 23(c)(4) to control and shape [the] action." *Goebel v. Colo. Dep't of Inst., supra,* 764 P.2d at 795. *See generally Fogel v. Wolfgang,* 47 F.R.D. 213, 217 (S.D.N.Y.1969) ("Efficiency will be served by allowing plaintiffs to litigate all the complex issues common to the class; and requiring individual proofs of reliance and damages at a later stage . . . .") (cited with approval in *Goebel* ).

The order is reversed, and the case is remanded for further proceedings consistent with this opinion.

Judge TAUBMAN concurs.

Judge NIETO ** dissents.

Judge NIETO dissenting.

I dissent from the majority opinion because it rests so heavily on the conclusion that plaintiff asserted the "fraud on the market" theory of recovery in the trial court. In my opinion, that theory was not adequately raised in the trial court and therefore, should not be considered here in determining whether the trial court properly decertified the class. Plaintiff may be able to point to isolated sentences and footnotes to argue that it was raised, but in my opinion these references are insufficient to apprise the trial court of the nature of this new theory.

I do not disagree with the majority's statement of the law applicable to class action certification and decertification, but I disagree with its view of the claims raised in the trial court. This disagreement leads me to view the evidence presented in the motion to decertify in a manner different from the view expressed by the majority.

The thrust of plaintiff's complaint was to assert a claim for one class of persons who suffered the same damage and who were all entitled to a refund of all premiums paid to defendants for two or more policies containing uninsured/underinsured motorist (UM/UIM) coverage but which did not provide any additional benefit not already provided in the first UM/UIM coverage. That the trial court understood this to be the thrust of plaintiff's claim is clear from the class certification order. The order assumed that the additional UM/UIM coverage "provided no meaningful benefit." The single class certified included "all persons insured by defendants' since *DeHerrera [v. Sentry Insurance Co.,* 30 P.3d 167 (Colo.2001) ] under multiple policies." The damages for all class members would be "those excess premiums paid ... for which no additional benefit

was provided." In responding to defendants' motion to decertify the class, plaintiff continued to assert this single theory of recovery. There was no clear assertion that a partial refund under a "fraud on the market" theory would be pursued, and no suggestion whatsoever that additional subclasses could or should be established for claimants who would not be entitled to a full refund and whose claims would require different proof. *See* C.R.C.P. 23(c)(4).

Because plaintiff's claim was so clearly focused on a single class, a single claim, and a single measure of damages, the second judge was, in my opinion, correct in determining that defendants had presented new circumstances justifying decertification of the class.

Defendants showed that the additional UM/UIM coverage provided benefits beyond the original coverage and that a significant number of the class members would likely have opted for this additional coverage. The majority holds that the additional benefits from a second UM/UIM policy were obvious from reading *DeHerrera v. Sentry Insurance Co., supra,* and that defendants could have shown this in their opposition to plaintiff's motion to certify the class. While it is true that defendants could have shown the existence of additional benefits, they could not have shown the extensive impact the additional benefits would have upon the class until plaintiff's deposition was taken and the State Farm statistical evidence was disclosed. This new evidence showed that it was likely that many members of the class would not be entitled to a full refund, as claimed by plaintiff, because many of them might have wanted and been willing to pay for additional coverage. This evidence has a clear impact on the cohesiveness of the class membership and the proof required to establish the claims.

When this new evidence is viewed through the prism of the "fraud on the market" theory, it has different implications. However, in my view, plaintiff never asserted this theory and never even suggested that a class of

---

** Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and

§ 24–51–1105, C.R.S.2006.

**116**

claimants with two subclasses should be certified. When the evidence is viewed only from the perspective of plaintiff's single asserted claim for one class of claimants, it becomes clear that this is new evidence worthy of consideration in deciding the motion to decertify.

The majority rejects the statistical evidence because it related to a different insurance company rather than to defendants' insureds and because the nature of State Farm's *DeHerrera* disclosure was not made known to the court. However, at oral argument, plaintiff acknowledged that the demographics of State Farm's insureds does not differ from that of defendants' insureds. Accordingly, I would conclude that the evidence was relevant. As to the unknown nature of the disclosure, it must be remembered that defendants were not attempting to admit evidence to prove the merits of their defense, but rather were attempting to show that significant *causation and damage* issues existed that rendered the class certification improper. Under these circumstances, I would conclude that it was within the trial court's discretion to determine the weight to be given the evidence. *See Medina v. Conseco Annuity Assurance Co.*, 121 P.3d 345 (Colo.App.2005)(certification of a class action is within the trial court's discretion). Further, I do not agree that the trial court prejudged a merits issue. The ruling did not decide the reliance and causation issues, but rather, in effect, held that such issues existed and impacted the class certification question. *See* C.R.C.P. 23(b)(3) (in deciding whether to certify class, court must consider whether common questions of law or fact predominate over questions affecting only individual members).

In conclusion, I would not consider plaintiff's "fraud on the market" theory because it was raised for the first time on appeal. Then, viewing the case only from the theory of recovery asserted in the trial court, I would conclude that the trial court did not abuse its discretion in granting the motion to decertify.