Kent HYTKEN;  Future Residential, LLC;
Hytken Partnership I, LLC;  and Hytken
Partnership, LLC, Plaintiffs–Appellants,

v.

Daniel F. WAKE;  J.S. Horowitz;  Krendl,
Horowitz & Krendl;  Horowitz & Wake;
James J. Peters;  Christopher L. Ture-
son;  Riggs, Abney, Neal, Turpen, Orbi-
son & Lewis;  and Vranesic, Peters &
McBride, P.C., Defendants–Appellees.

No. 01CA2107.

Colorado Court of Appeals,
Div. II.

Sept. 26, 2002.

Certiorari Denied April 28, 2003.

Brice A. Tondre, Denver, Colorado, for Plaintiffs–Appellants.

Davis, Graham & Stubbs, LLP, Michael J. Gallagher, Denver, Colorado, for Defendants–Appellees Daniel F. Wake; J.S. Horowitz; Krendl, Horowitz & Krendl; and Horowitz & Wake.

Nathan, Bremer, Dumm & Myers, P.C., Mark H. Dumm, Allyson C. Hodges, Denver, Colorado, for Defendants–Appellees James J. Peters; Christopher L. Tureson; Riggs, Abney, Neal, Turpen, Orbison & Lewis; and Vranesic, Peters & McBride, P.C.

Opinion by Judge ROY.

Plaintiffs, Kent Hytken; Future Residential, LLC; Hytken Partnership I, LLC; and Hytken Partnership, LLC, appeal from a trial court judgment dismissing their action against defendants, Daniel F. Wake; J.S. Horowitz; Krendl, Horowitz & Krendl; Horowitz & Wake; James J. Peters; Christopher L. Tureson; Riggs, Abney, Neal, Turpen, Orbison & Lewis; and Vransec, Peters & McBride, P.C. Plaintiffs also appeal the order denying their motion for reconsideration. We affirm.

On December 29, 2000, plaintiffs, none of whom is a Colorado resident, filed legal malpractice and negligence actions against defendants, attorneys who had unsuccessfully represented them in earlier litigation. However, plaintiffs did not file a cost bond as required by § 13–16–101, C.R.S.2002.

Pursuant to § 13–16–102, C.R.S.2002, defendants moved to compel plaintiffs to post a cost bond in the amount of $90,000. In their response, plaintiffs acknowledged that a cost bond was required, but argued that a bond of $7,500 was adequate. On July 6, 2001, the trial court granted defendants' motion, set the amount of bond at $75,000, and ordered that it be posted within twenty days.

On July 25, 2001, plaintiffs moved for an extension of time to post the bond, alleging that they had been "diligently attempting" to obtain one. Defendants objected to the extension and moved for dismissal of the action pursuant to § 13–16–102. The trial court granted plaintiffs an extension until August 25, 2001.

On August 24, 2001, plaintiffs moved for another extension, again alleging that they

were "using all due diligence" and that the issuance of a bond depended on the "final condition" that they supply the bonding company a letter of credit. Defendants again objected and moved to dismiss pursuant to § 13–16–102. The trial court granted plaintiffs an extension to September 8, 2001.

On September 12, 2001, plaintiffs filed a third, untimely motion for an extension until September 17, 2001, alleging that they were "diligently attempting" to obtain a cost bond. Plaintiffs asserted that the bonding company advised them "at the 11th hour" that it could not issue a bond because it had a conflict of interest based on bonds it issued to one of the defendants in other cases. Defendants again opposed the extension and moved for dismissal pursuant to § 13–16–102. The trial court granted plaintiffs an extension to September 19, 2001.

This record does not indicate that the trial court considered or explicitly denied defendants' pending motions to dismiss pursuant to § 13–16–102.

On September 19, 2001, plaintiffs filed a fourth motion for an extension, again alleging that they were "diligently attempting" to obtain a bond and that a new bonding agency had approved the bond and was transmitting it to defendants. On September 20, 2001, the trial court denied plaintiffs' request and dismissed the action.

On September 25, 2001, plaintiffs moved for reconsideration of the dismissal, and they filed an employee's affidavit detailing the attempts to obtain a cost bond. The trial court denied the motion, and this appeal of the order of dismissal followed.

I.

Plaintiffs contend that the trial court erred in dismissing their action for failure to file a cost bond because they did not "neglect or refuse" to do so, but rather were unable to obtain one. We disagree.

A.

■ No Colorado appellate decision has enunciated the standard for review of a dismissal under § 13–16–102 based on a plain-

tiff's neglect or refusal to file a cost bond. We hold that such dismissals are reviewed under an abuse of discretion standard.

■ An action brought by a nonresident plaintiff cannot proceed without the filing of a cost bond once a defendant moves to compel such a filing under § 13–16–102. *Cf. Neidhart v. Collins,* 46 Idaho 759, 271 P. 321 (1928). A nonresident plaintiff's neglect or refusal to file such a bond thus is equivalent to failure or neglect to prosecute. *See, e.g., Ecker v. Town of West Hartford,* 205 Conn. 219, 530 A.2d 1056 (1987)(discussing dismissal for "failure or neglect to prosecute"); *Laffey v. City of New York,* 52 N.Y.2d 796, 436 N.Y.S.2d 707, 417 N.E.2d 1248 (1980)(same).

■ Factual determinations of a party's neglect or refusal generally are reviewed under a clear error or abuse of discretion standard. *See E–470 Public Highway Authority v. 455 Co.,* 3 P.3d 18 (Colo.2000). In light of the nature of a determination of neglect under § 13–16–102 and the prevailing standards in similar cases concerning failure or neglect to prosecute, we conclude that the trial court has discretion to determine whether a plaintiff's delay in filing a cost bond is a result of neglect or refusal. *See Lake Meredith Reservoir Co. v. Amity Mutual Irrigation Co.,* 698 P.2d 1340 (Colo.1985) (applying the same rationale with respect to a plaintiff's failure to prosecute).

B.

■ "Abuse of discretion" is a legal term reflecting the opinion of an appellate court that the trial court committed an error of law in the circumstances. *See Cook v. District Court,* 670 P.2d 758 (Colo.1983). An appellate court will find an abuse of discretion only where the trial court's findings and conclusions are so manifestly against the weight of evidence in the record as to compel a contrary result, such that the trial court's ruling is manifestly arbitrary, unreasonable, or unfair. *See In re Weisbard,* 25 P.3d 24 (Colo.2001); *E–470 Public Highway Authority v. 455 Co., supra.*

As pertinent here, § 13–16–102 provides:

If [a civil] action [by a nonresident] is commenced without filing such instrument

of writing ... it is the duty of the court, on motion of the defendant or any officer of the court, ... to rule the plaintiff, on or before the day in such rule named, to give security for the payment of costs in such suit. If such plaintiff neglects or refuses, on or before the day in such rule named, to file such instrument, the court, on motion, shall dismiss the suit.

Plaintiffs contend that they neither neglected nor refused to file a cost bond, but were unable to do so, and therefore the case could not be dismissed. In support of this argument, plaintiffs cite *Walcott v. District Court*, 924 P.2d 163, 166 (Colo.1996), for the proposition that "[i]nability to obtain a cost bond does not equate to the neglect or refusal to pay such a bond." This reliance, however, is misplaced.

In *Walcott*, the trial court dismissed an indigent plaintiff's case for failure to post the mandatory cost bond. On appeal, the supreme court focused only on the plaintiff's inability to pay costs *because of indigency*, an exception explicitly provided in § 13–16–103, C.R.S.2002. Thus, the supreme court's analysis was limited to those situations where a plaintiff's inability to file a cost bond stems from the plaintiff's indigency.

The supreme court also noted that "[i]f the General Assembly intended that failure to file a cost bond, regardless of the reason, would mandate dismissal, it would not have predicated dismissal specifically on whether a 'plaintiff neglects or refuses.' " *Walcott v. District Court, supra*, 924 P.2d at 166. However, the supreme court did not define "neglect."

Plaintiffs here agreed to file a cost bond, so the sole question before us is what constitutes "neglect" under § 13–16–102.

■ When interpreting a statute, an appellate court looks to its purposes, reading it as a whole and every word therein to construe its terms harmoniously. *See Colorado Dept. of Labor & Employment v. Esser*, 30 P.3d 189 (Colo.2001). An appellate court must interpret a statute to give effect to the entire statutory scheme. *See Preston v. Dupont*, 35 P.3d 433 (Colo.2001).

■ Under §§ 13–16–101 and 13–16–102 the court has no discretion regarding the filing of a cost bond, and dismissal for failure to do so is mandatory. *See Edgar Gold & Silver Mining Co. v. Taylor*, 10 Colo. 110, 14 P. 113 (1887); *Lewis v. Keim*, 883 P.2d 610 (Colo.App.1994), *disapproved on other grounds by Walcott v. District Court, supra*. The General Assembly clearly and unambiguously intended to preclude lawsuits by nonresident plaintiffs unless a cost bond is filed. However, nonresident plaintiffs are excepted from the requirements of §§ 13–16–101 and 13–16–102 if they are unable to file a cost bond because of indigency, *see* § 13–16–103, or if the defendant waives the bond, *see Payton v. M. Spiesberger & Son Co.*, 40 Colo. 289, 90 P. 605 (1907). Absent these circumstances, nothing in the statutes or case law provides an exception for a nonresident plaintiff who is unable to obtain a cost bond despite good faith efforts to do so, nor does the statute contemplate a showing of excusable neglect. In fact, the statute unambiguously makes neglect inexcusable by mandating dismissal in the event of its occurrence.

■ Neglect is "a purely objective fact, that a person has not done that which it was his duty to do; it does not indicate the *reason* for this failure." *Black's Law Dictionary* 1055 (7th ed.1999). Therefore a nonresident plaintiff's multiple failures to file a cost bond as required by § 13–16–101 could constitute "neglect" as that term is used in § 13–16–102. Accordingly, the burden is on the plaintiff to file a cost bond, and failure to do so for any reason other than indigency or a defendant's waiver mandates dismissal. To hold otherwise would read into the statutory scheme exceptions not provided by the legislature. *See Slack v. Farmers Insurance Exchange*, 5 P.3d 280 (Colo.2000)(courts will not create an exception to a statute that the plain language does not suggest or demand); *Dikeou v. Dikeou*, 928 P.2d 1286 (Colo.1996); *see also Cook v. District Court, supra* (holding that discretion in making in forma pauperis determination limited to factors in § 13–16–103).

Our conclusion finds additional support in *Neidhart v. Collins, supra*, which held that where a cost bond is not given, especially

after the plaintiff has been afforded ample opportunity to do so, the court may dismiss the action.

Nor is our interpretation of the word "neglect" inconsistent with *Walcott v. District Court, supra.* Under our interpretation, failure to file a cost bond does not mandate dismissal if a nonresident plaintiff failed to file the bond because of indigency or if the defendant has waived the requirement. *See* § 13–16–103; *Payton v. M. Spiesberger & Son Co., supra.*

■ Here, plaintiffs failed to file a cost bond before instituting the suit, as required by § 13–16–101. At the time of the dismissal, almost nine months later, no cost bond had been filed. Defendants' repeated motions to dismiss for the failure to file a cost bond negate any suggestion of waiver.

Plaintiffs did not seek an exception from the cost bond requirement or suggest they were unable to comply with the requirement because of indigency; rather, plaintiffs continually assured the court that they would file a cost bond and insisted that there were mitigating circumstances contributing to the delay. Nevertheless, plaintiffs missed both the third and the fourth extended deadlines without an explanation, pleading only mitigating circumstances.

There can be little doubt that, irrespective of the reason, plaintiffs did not fulfill their duty to file a cost bond by any of the many extended deadlines granted by the trial court. On this record, we conclude the trial court did not abuse its discretion by dismissing the case.

In their reply brief, plaintiffs argue that the dismissal violates C.R.C.P. 121 §§ 1–10 or 1–15 and that the trial court acted prematurely because defendants did not move to dismiss after the trial court denied the last request for an extension. However, neither argument was made to the trial court in the motion for reconsideration. We cannot address issues raised for the first time on appeal, *Minto v. Lambert,* 870 P.2d 572 (Colo. App.1993); nor do we address issues raised for the first time in the reply brief. *People v. Czemerynski,* 786 P.2d 1100 (Colo.1990). We note, however, that when the trial court dismissed the action, there were three pending motions to dismiss pursuant to § 13–16–102, to which plaintiffs had responded.

Having concluded that plaintiffs "neglected" to file a cost bond within the meaning of § 13–16–102, we need not decide whether they "refused" to do so.

## II.

Plaintiffs also contend that the trial court abused its discretion by setting a high cost bond and dismissing the case without first holding an evidentiary hearing. We disagree.

■ The reasonableness of costs and their amount are matters within the sound discretion of the trial court, and we will not disturb that determination on appeal absent an abuse of discretion. *See Ballow v. PHICO Insurance Co.,* 878 P.2d 672 (Colo.1994). A party must request a hearing on the reasonableness of expert fees or waives the right thereto. *See Van Schaack v. Van Schaack Holdings, Ltd.,* 856 P.2d 15 (Colo. App.1992), *aff'd,* 867 P.2d 892 (Colo.1994).

■■ In setting the amount of the cost bond, the trial court explicitly took note of the complexity and breadth of the case, the amount of damages sought, the numerous factual bases allegedly supporting the claims, the long period over which the claims occurred, the large number of defendants, and the need for expert witnesses. Also, plaintiffs did not request a hearing on costs, and there was no statutory requirement that the court hold such a hearing. We therefore perceive no abuse of discretion.

## III.

Plaintiffs contend that the trial court erred in denying their motion to reconsider the dismissal. We disagree.

■ A motion to reconsider is addressed to the sound discretion of the trial court. *See Bowman v. Songer,* 820 P.2d 1110 (Colo.1991). Because the trial court properly concluded that plaintiffs neglected to file a cost bond, we perceive no abuse of discretion

in the denial of the motion for reconsideration.

The judgment and order are affirmed.

Judge JONES and Judge CASEBOLT concur.