COLORADO COURT OF APPEALS                                    **2016COA103**

Court of Appeals No. 15CA0842
City and County of Denver District Court No. 14CV34613
Honorable Catherine A. Lemon, Judge

West Colorado Motors, LLC, d/b/a Autonation Buick GMC Park Meadows,

Plaintiff-Appellant,

v.

General Motors, LLC; Alpine Buick GMC, LLC; and Barbara Brohl, as Executive
Director of the Colorado Department of Revenue,

Defendants-Appellees.

ORDERS AFFIRMED

Division VI
Opinion by CHIEF JUDGE LOEB
Kapelke* and Nieto*, JJ., concur

Announced June 30, 2016

Lindquist & Vennum LLP, Patrick G. Compton, Denver, Colorado; Williams &
Connolly LLP, Daniel Katz, Beth A. Levene, Washington D.C., for Plaintiff-
Appellant

Wheeler Trigg O'Donnell LLP, Mark T. Clouatre, John P. Streelman, Webster C.
Cash III, Denver, Colorado, for Defendant-Appellee General Motors LLC

Brownstein Hyatt Farber Schreck, LLP, Jonathan G. Pray, Hannah M. Caplan,
Denver, Colorado, for Defendant-Appellee Alpine Buick GMC LLC

Cynthia H. Coffman, Attorney General, Y.E. Scott, Senior Assistant Attorney
General, Austin P. Bernstein, Assistant Attorney General Fellow, Denver,
Colorado, for Defendant-Appellee Barbara Brohl

*Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and § 24-51-1105, C.R.S. 2015.

¶ 1     In this case involving the relocation of an automobile dealership, plaintiff, West Colorado Motors, LLC, d/b/a Autonation Buick GMC Park Meadows (Park Meadows), appeals two district court orders dismissing its claims against defendants General Motors, LLC (GM), Alpine Buick GMC, LLC (Alpine), and Barbara Brohl, as the Executive Director of the Colorado Department of Revenue (Executive Director), for lack of subject matter jurisdiction pursuant to C.R.C.P. 12(b)(1).  Park Meadows also appeals the district court's order denying its motion for reconsideration of the court's order granting the Executive Director's motion to dismiss. We affirm.

I.     Background and Procedural History

¶ 2     Park Meadows is a franchised Buick and GMC automobile dealership located at 8101 East Parkway Drive, Lone Tree, Colorado.  Alpine is also a franchised Buick and GMC automobile dealership and is located at 8120 W. Tufts Avenue, Denver, Colorado.  GM is a manufacturer and distributor of automobiles.

¶ 3     This case arose after GM provided statutory notice to Park Meadows on April 22, 2014, in a written letter, that it intended to approve the relocation of the Alpine dealership from its location in

Denver to a location in Littleton, Colorado. Pursuant to section 12-6-120.3(1), C.R.S. 2015, GM was required to provide at least sixty days' notice to certain of its franchised dealers if it intended to relocate an existing motor vehicle dealer to a location that was within another motor vehicle dealer's "relevant market area."

## A. Communications Between Park Meadows and the Executive Director

¶ 4        On June 12, 2014, pursuant to section 12-6-120.3(4)(b)(I), Park Meadows sent a letter to the Executive Director protesting GM's approval of Alpine's relocation and requesting that she conduct an investigation of the relocation, hold a hearing, and/or issue a cease and desist order. *See* §§ 12-6-120.3(4)(b)(I)(A)-(C). In this letter, Park Meadows argued that it had a right to bring an action before the Executive Director in order for GM to "meet its burden of proof" regarding several factors articulated in section 12-6-120.3(4)(a)(I)-(IV), and further argued that "[t]he relocation of Alpine by GM will result in a loss of sales and market share, as well as service opportunity, by [Park Meadows]." Park Meadows attached the following three documents to its letter: (1) a map showing that Alpine's relocation site was within 7.3 miles of Park

Meadows' location; (2) a map showing the population of the Denver area according to the 2010 census tract; and (3) a map illustrating that Alpine's relocation site would allegedly infringe on Park Meadows' "Area of Geographic Sales and Service Advantage."

¶ 5    In a letter dated August 20, 2014, the Executive Director responded to Park Meadows, stating, in pertinent part, as follows:

> As you know, this office has authority to investigate and resolve alleged violations of part 1 of article 6 of title 12, C.R.S., or the rules promulgated thereto.  *See, e.g.,* § 12-6-105(1)(d), C.R.S. and § 12-6-120.3(4)(b)(I), C.R.S.  Your letter does not include any allegation that a violation has occurred.  *See, e.g.,* § 12-6-118(1), C.R.S. (grounds for discipline of manufacturers and distributors) and § 12-6-120, C.R.S. (unlawful acts).
>
> Based on the information you have provided, I find no basis to proceed with an investigation or to issue a cease and desist order.

¶ 6    On September 1, 2014, Park Meadows sent a second letter to the Executive Director.  In its second letter, Park Meadows "sought redress for GM's unreasonable approval of the relocation of Alpine," which would result "in loss of sales, market share and service opportunities for [Park Meadows]."  Park Meadows stated that GM's unreasonable approval of Alpine's relocation violated section

3

12-6-120.3(1.5) ("A manufacturer shall reasonably approve or disapprove of a motor vehicle dealer facility . . . relocation request within sixty days after the request . . . ."), which, in turn, also violated section 12-6-120(1)(h), C.R.S. 2015 ("It is unlawful and a violation of this part 1 for any manufacturer, distributor, or manufacturer representative . . . [t]o violate any duty imposed by, or fail to comply with, any provision of section 12-6-120.3 . . . ."). Based on these alleged violations, Park Meadows argued that it was entitled to bring an action before the Executive Director pursuant to section 12-6-120.3(4)(a) ("If a licensee . . . brings an action or proceeding before the executive director or a court pursuant to this part 1, the manufacturer shall have the burden of proof . . . ."), and again asked the Executive Director to conduct an investigation, hold a hearing, and issue a cease and desist order.

¶ 7    In a letter dated November 6, 2014, the Executive Director sent a second response to Park Meadows, stating as follows:

> In your letter, you renewed your request that this office conduct an investigation and issue a cease and desist order, or issue a notice of charges to General Motors, LLC and hold a hearing, in connection with the proposed relocation of Alpine Buick. . . .

4

As I stated in my letter of August 20, 2014, this office has authority to investigate and resolve alleged violations of part 1 of article 6 of title 12, C.R.S., or the rules promulgated thereto. See, *e.g.*, § 12-6-105(1)(d), C.R.S., and § 12-6-120.3(4)(b)(1), C.R.S. Based upon your letters of June 12 and September 1, 2014, and the attachments, I see no indication that a violation of part 1 or the rules promulgated thereto has occurred. See, *e.g.*, § 12-6-118(1), C.R.S. (grounds for discipline of manufacturers and distributors) and § 12-6-120, C.R.S. (unlawful acts).

Therefore, based on the information you have provided, I again find no basis to proceed with an investigation, to issue a cease and desist order, or to take other action.

## B.  District Court Proceedings

¶ 8     On December 9, 2014, Park Meadows filed a complaint in Denver District Court, alleging two claims for relief. Park Meadows' first claim for relief was directed against GM and Alpine, alleging that GM unreasonably approved Alpine's relocation in violation of section 12-6-120.3(1.5). Park Meadows sought a stay of the relocation of Alpine, a hearing and a judgment as to the reasonableness of GM's approval of Alpine's relocation, and a cease and desist order against GM and Alpine with respect to the proposed relocation.

5

¶ 9    Park Meadows' second claim for relief was brought in the alternative against the Executive Director only, stating: "If the Court determines that it does not have jurisdiction to conduct the hearing and grant the relief requested because of [Park Meadows'] prior correspondence with the Executive Director, then [Park Meadows] pleads this Second Claim for Relief as an alternative to the First Claim for Relief."  Park Meadows requested a declaration from the district court that, in its June 12 and September 1 letters to the Executive Director, it had sufficiently alleged a violation of section 12-6-120.3 due to GM's allegedly unreasonable approval of Alpine's relocation, and a declaration that the Executive Director must "undertake a hearing or other activity" upon receipt of Park Meadows' protest.  Park Meadows also requested that the district court issue an order pursuant to C.R.C.P. 106 compelling the Executive Director to determine whether the proposed relocation of Alpine was reasonable or unreasonable under section 12-6-120.3.

¶ 10    The Executive Director subsequently filed a motion to dismiss Park Meadows' second claim for relief for lack of subject matter jurisdiction pursuant to C.R.C.P. 12(b)(1) and section 12-6-120.3(4)(b)(II), which states: "The court of appeals has initial

6

jurisdiction to review all final actions and orders that are subject to judicial review of the executive director made pursuant to this subsection (4)." The Executive Director contended that her November 6 letter constituted a "final agency action," and, thus, any judicial review of the action must be sought in the court of appeals. Alpine filed a motion to join in the Executive Director's motion to dismiss.

¶ 11 In a written order dated March 19, 2015, the district court granted the Executive Director's motion to dismiss Park Meadows' second claim for relief, concluding that the Executive Director's November 6 letter constituted final agency action. Accordingly, the district court concluded that it had no subject matter jurisdiction over the second claim for relief because any judicial review of the Executive Director's decision should have been sought in the court of appeals. The court did not address Park Meadows' first claim for relief against Alpine and GM because Alpine's purported joinder did not "constitute a separate motion."

¶ 12 Thereafter, Park Meadows filed a motion for reconsideration, requesting the district court to reconsider its order granting the Executive Director's motion to dismiss. The district court denied

Park Meadows' motion for reconsideration in an order dated April 15, 2015.

¶ 13 Additionally, Alpine filed its own motion to dismiss Park Meadows' first claim for relief against it, pursuant to C.R.C.P. 12(b)(1) and section 12-6-120.3(4)(b)(II). The district court granted Alpine's motion to dismiss on May 13, 2015, dismissing Park Meadows' first claim for relief against both Alpine and GM and dismissing this action in its entirety.

¶ 14 In its May 13 order, the court construed Park Meadows' first claim for relief against Alpine and GM as a request for the court to determine the reasonableness of GM's approval of Alpine's relocation. Because Park Meadows "first sought this determination through Ms. Brohl as the Executive Director of the Colorado Department of Revenue[,]" the court concluded that Park Meadows was "asking the [c]ourt to review and effectively overrule [the Executive Director's] determination — the 'final agency action.'" Pursuant to section 12-6-120.3(4)(b)(II), the court concluded that "jurisdiction for such relief lies in the Court of Appeals, not in the District Court."

¶ 15    Further, Park Meadows had argued in response to Alpine's motion to dismiss that section 12-6-122(3), C.R.S. 2015,[1] provided the district court with jurisdiction to resolve Park Meadows' first claim against GM and Alpine.  However, the district court also concluded in its May 13 order that Park Meadows' first claim for relief against GM and Alpine did not seek damages under section 12-6-122(3), but instead only sought a stay, followed by a cease and desist order, with respect to Alpine's proposed relocation.  Thus, the court found that Park Meadows' citation to section 12-6-122(3) in its response to Alpine's motion to dismiss could not alter the nature of the relief actually sought in the complaint, and did not "bypass or cure any jurisdictional issues underlying [Park Meadows'] Complaint."

¶ 16    Park Meadows now appeals the following three district court orders: the March 19 order granting the Executive Director's motion to dismiss; the April 15 order denying Park Meadows' motion for

---

[1] Section 12-6-122(3), C.R.S. 2015, states: "If any licensee suffers any loss or damage because of a violation of section 12-6-120(1) or 12-6-120.3(5), the licensee shall have a right of action against the manufacturer, distributor, or manufacturer representative."

9

reconsideration; and the May 13 order granting Alpine's motion to dismiss and dismissing the case in its entirety.

## II.   Pertinent Statutory Provisions

¶ 17    The following statutory provisions regarding automobile dealers are pertinent to this appeal.

Section 12-6-120, entitled "Unlawful Acts," provides:

> (1) It is unlawful and a violation of this part 1 for any manufacturer, distributor, or manufacturer representative:
>
> . . .
>
> (h) To violate any duty imposed by, or fail to comply with, any provision of section 12-6-120.3, 12-6-120.5, or 12-6-120.7.

¶ 18    Section 12-6-120.3, entitled "New, reopened, or relocated dealer -- notice required -- grounds for refusal of dealer license -- definitions -- rules," provides, in pertinent part:

> (1) No manufacturer or distributor shall establish an additional new motor vehicle dealer, reopen a previously existing motor vehicle dealer, or relocate an existing motor vehicle dealer without first providing at least sixty days' notice to all of its franchised dealers and former dealers whose franchises were terminated, cancelled, or not renewed by a manufacturer, distributor, or manufacturer representative in the previous five years due to the insolvency of the manufacturer or distributor within whose relevant market area

10

the new, reopened, or relocated dealer would be located. . . .

(1.5) A manufacturer shall reasonably approve or disapprove of a motor vehicle dealer facility initial site location or relocation request within sixty days after the request or after sending the notice required by subsection (1) of this section to all of its franchised dealers and former dealers whose franchises were terminated, cancelled, or not renewed in the previous five years due to the insolvency of the manufacturer or distributor, whichever is later, but not to exceed one hundred days.

. . . .

(4)(a) If a licensee . . . brings an action or proceeding before the executive director or a court pursuant to this part 1, the manufacturer shall have the burden of proof on the following issues:

(I) The size and permanency of investment and obligations incurred by the existing motor vehicle dealers of the same line-make located in the relevant market area;

(II) Growth or decline in population and new motor vehicle registrations in the relevant market area;

(III) The effect on the consuming public in the relevant market area and whether the opening of the proposed additional, reopened, or relocated dealer is injurious or beneficial to the public welfare; and

(IV) Whether the motor vehicle dealers of the same line-make in the relevant market area

are providing adequate and convenient customer care for motor vehicles of the same line-make in the relevant market area, including but not limited to the adequacy of sales and service facilities, equipment, parts, and qualified service personnel.

(b)(I) In addition to the powers specified in section 12-6-105, the executive director has jurisdiction to resolve actions or proceedings brought before the executive director pursuant to this part 1 that allege a violation of this part 1 or rules promulgated pursuant to this part 1. The executive director may promulgate rules to facilitate the administration of such actions or proceedings, . . . .

(II) The court of appeals has initial jurisdiction to review all final actions and orders that are subject to judicial review of the executive director made pursuant to this subsection (4). Such proceedings shall be conducted in accordance with section 24-4-106, C.R.S.

¶ 19    Section 12-6-122(3), entitled "Right of action for loss,"

provides:

If any licensee suffers any loss or damage because of a violation of section 12-6-120(1) or 12-6-120.3(5), the licensee shall have a right of action against the manufacturer, distributor, or manufacturer representative.  In any court action wherein a manufacturer, distributor, or manufacturer representative has been found liable in damages to any licensee under this part 1, any licensee so damaged shall also be entitled to recover reasonable attorney fees and costs as part of his or her damages.

### III.   Standard of Review

¶ 20   A C.R.C.P. 12(b)(1) motion to dismiss challenges a court's subject matter jurisdiction. *Tulips Invs., LLC v. State ex rel. Suthers*, 2015 CO 1, ¶ 11. Appellate courts apply a clearly erroneous standard of review when resolution of the jurisdictional issue involves a factual dispute. *Id.* However, when there are no disputed facts, as is the case here, the determination of a court's subject matter jurisdiction presents a question of law which we review de novo. *Id.*; *see also Barry v. Bally Gaming, Inc.*, 2013 COA 176, ¶ 8.

¶ 21   A motion to reconsider is addressed to the sound discretion of the district court. *Hytken v. Wake*, 68 P.3d 508, 512 (Colo. App. 2002).

¶ 22   Statutory interpretation is a question of law subject to de novo review. *Tulips*, ¶ 11. Our primary task when interpreting a statute is to ascertain and give effect to the intent of the legislature. *Id.* If the statutory language is clear, we interpret the statute according to its plain and ordinary meaning without resort to other statutory construction aids. *Marks v. Gessler*, 2013 COA 115, ¶ 26.

Additionally, we read the statute as a whole, giving consistent, harmonious, and sensible effect to all parts. *Tulips*, ¶ 11.

## IV. Analysis

¶ 23 As discussed above, Park Meadows appeals three district court orders — two orders granting the Executive Director's and Alpine's motions to dismiss pursuant to C.R.C.P. 12(b)(1), and one order denying Park Meadows' motion for reconsideration. The district court granted the Executive Director's and Alpine's motions to dismiss and denied Park Meadows' motion for reconsideration based on its conclusion that the Executive Director's November 6 letter was a final agency action giving the court of appeals sole jurisdiction to review the Executive Director's decision. *See* § 12-6-120.3(4)(b)(II). Thus, the central issue in this appeal is whether the Executive Director's November 6 letter constituted final agency action subject to judicial review by the court of appeals.

### A. Final Agency Action

¶ 24 Park Meadows contends that the Executive Director's November 6 letter did not satisfy the requisite elements of a "final agency action" under Colorado law. We disagree.

### 1. Statutory Requirements For "Action" and "Final Agency Action"

¶ 25    As stated above, section 12-6-120.3(4)(b)(II) provides that "[t]he court of appeals has initial jurisdiction to review all final actions and orders that are subject to judicial review of the executive director . . . .  Such proceedings shall be conducted in accordance with section 24-4-106, C.R.S."  Section 12-6-120.3, however, does not define the terms "action" or "final action."

¶ 26    Nonetheless, the State Administrative Procedure Act (APA), sections 24-4-101 to -108, C.R.S. 2015, serves as a gap-filler, and "its provisions apply to agency actions unless they conflict with a specific provision of the agency's statute or another statutory provision preempts the provisions of the APA," *Marks*, ¶ 29 (quoting *V Bar Ranch LLC v. Cotten*, 233 P.3d 1200, 1205 (Colo. 2010)).

¶ 27    Pursuant to section 24-4-102(1), C.R.S. 2015, the definition of the term "'[a]ction' includes the whole or any part of any agency rule, order, interlocutory order, license, sanction, relief, or the equivalent or denial thereof, or failure to act."  Section 24-4-102(1) further provides that "[a]ny agency rule, order, license, sanction, relief, or the equivalent or denial thereof which constitutes final

15

agency action shall include a list of all parties to the agency proceeding and shall specify the date on which the action becomes effective."

¶ 28     Park Meadows does not dispute that the Executive Director's November 6 letter constituted agency "action," pursuant to section 24-4-102(1).  Park Meadows contends, however, that the Executive Director's letter constituted only a "failure to act," and it argues that a "failure to act" cannot constitute "final agency action" because the second sentence of section 24-4-102(1) does not include the phrase "failure to act" when listing what "final agency action" must include.[2]  We need not address this contention, however, because we conclude that the Executive Director's November 6 letter was an "order" and not a "failure to act."  Section 24-4-102(10) defines the term "order" as "the whole or any part of the final disposition (whether affirmative, negative, injunctive, or declaratory in form) by any agency in any matter other than rule-making."  The November

---

[2] We note, however, that a division of this court held in *Roosevelt Tunnel, LLC v. Norton*, 89 P.3d 427, 429 (Colo. App. 2003), that an agency's total failure to rule on a request for a temporary discharge permit constituted both a "failure to act" and also "final agency action."

16

6 letter meets this definition and thus is a "final action" under the APA.

¶ 29　Unlike *Roosevelt Tunnel, LLC v. Norton*, 89 P.3d 427, 428-29 (Colo. App. 2003), where an agency simply did not respond at all after the plaintiff filed a request for a temporary discharge permit, thus constituting a "failure to act," here the Executive Director sent a written response to Park Meadows which addressed the merits of Park Meadows' request.  The Executive Director looked to the applicable statutes and the information Park Meadows provided and found that there was no basis to proceed with an investigation, to issue a cease and desist order, or to take any other action; she did not see any "indication that a violation of part 1 [of article 6 of title 12, C.R.S.] or the rules promulgated thereto ha[d] occurred."  Thus, the Executive Director's letter was an "order," § 24-4-102(10), and constituted agency "action," § 24-4-102(1).

¶ 30　Section 24-4-102(1) also provides that "[a]ny agency rule, order, license, sanction, relief, or the equivalent or denial thereof which constitutes final agency action shall include a list of all parties to the agency proceeding and shall specify the date on which the action becomes effective."  Here, as the district court found, the

17

Executive Director's letter prominently displayed the date of November 6, 2014, in its heading, thus qualifying as the effective date of her action. Additionally, as found by the district court, the Executive Director's letter included the names of Park Meadows and the Executive Director, the only parties involved in the agency proceeding at that time. Thus, we are satisfied that the Executive Director's November 6 letter contained all of the required elements according to section 24-4-102(1) to constitute agency "action" and "final agency action."

### 2. Colorado Case Law on the Requirements for Final Agency Action

¶ 31 Colorado case law is clear that, for agency action to be final and subject to judicial review, the action must "(1) mark the consummation of the agency's decision-making process and not be merely tentative or interlocutory in nature, and (2) constitute an action by which rights or obligations have been determined or from which legal consequences will flow." *Chittenden v. Colo. Bd. of Social Work Exam'rs*, 2012 COA 150, ¶ 26.

¶ 32 In *Chittenden*, the State Board of Social Work Examiners investigated a complaint filed by a parent of one of the plaintiff's

18

patients. *Id.* at ¶¶ 1, 3-4. The Board found reasonable grounds to believe that the plaintiff, a licensed clinical social worker, had violated various statutory provisions. *Id.* at ¶¶ 1, 4. The Board made the plaintiff a settlement offer, but rather than accepting or rejecting this offer, the plaintiff submitted a petition for a declaratory order to the Board. *Id.* at ¶¶ 4-5. The Board then issued an order stating that it would not rule on the plaintiff's petition for a declaratory order. *Id.* at ¶ 6.

¶ 33 A division of this court concluded that the Board's order did not mark the consummation of the agency's decision-making process because the plaintiff's disciplinary action with the Board was still ongoing. *Id.* at ¶ 28. The division further concluded that the Board's order did not determine the plaintiff's rights and obligations, nor did any legal consequences flow from it because it did not determine whether the plaintiff would ultimately be subject to discipline. *Id.* at ¶ 29. Thus, the division concluded that the Board's order did not constitute "final agency action." *Id.* at ¶ 25.

¶ 34 Here, by contrast, the Executive Director's November 6 letter "marked the consummation of the agency's decision-making process" and was not "merely tentative or interlocutory in nature."

*Id.* at ¶ 26. The Executive Director concluded in her letter that there was "no basis to proceed with an investigation, to issue a cease and desist order, or to take other action." Unlike the Board's order in *Chittenden,* there was no separate ongoing action pending before the Executive Director. Instead, the Executive Director's letter indicated that her decision-making process and review of Park Meadows' request was complete.

¶ 35    Additionally, the Executive Director's November 6 letter "constitute[d] an action by which rights or obligations have been determined or from which legal consequences will flow." *Id.* Unlike in *Chittenden,* where the Board's order did not determine whether the plaintiff would ultimately be subject to discipline, the Executive Director's letter here determined on the merits that she was not going to take any action against GM or Alpine to stay or overturn GM's relocation decision. *Id.* at ¶ 29. Thus, if Park Meadows wanted to seek judicial review of the Executive Director's decision, it was required to do so in the court of appeals. *See* § 12-6-120.3(4)(b)(II).

¶ 36    We also reject Park Meadows' argument that the Executive Director's November 6 letter was not a final agency action because

it did not contain the word "final." In support of its argument, Park Meadows relies on *Colorado State Board of Medical Examiners v. Lopez-Samayoa*, 887 P.2d 8, 14 (Colo. 1994), a case in which an agency's final action was captioned "Final Board Order." However, the court in *Lopez-Samayoa* did not hold that the board's order there must contain the word "final" in order to be a final agency action, nor are we aware of any statute or case law in Colorado that mandates such a requirement.

## B. Formal Adjudicatory Proceeding Not a Prerequisite to Final Agency Action

¶ 37    Park Meadows also contends that a formal adjudicatory proceeding is a prerequisite to final agency action. Thus, Park Meadows argues that what it characterizes as an informal exchange of letters between itself and the Executive Director lacked the formality necessary for an adjudicatory proceeding, and, accordingly, the November 6 letter could not constitute final agency action. We are not persuaded.

¶ 38    To support its argument, Park Meadows relies on several rulemaking cases and other inapposite cases, none of which articulates any requirement that a formal adjudicatory proceeding

21

must precede a final agency action.  *See Colo. Office of Consumer Counsel v. Mountain States Tel. & Tel. Co.*, 816 P.2d 278 (Colo. 1991); *CF & I Steel, L.P. v. Air Pollution Control Div.*, 77 P.3d 933 (Colo. App. 2003).  Additionally, in *Marks*, ¶ 34, a division of this court specifically rejected the argument that a formal adjudication is a procedural prerequisite to every agency action.  The division in *Marks*, ¶ 39, stated that the APA defines "action" without reference to "adjudication," *see* § 24-4-102(1), and the judicial review section of the APA "does not once use the term 'adjudication,'" *see* § 24-4-106, C.R.S. 2015.  The division concluded that "[t]he prerequisite for judicial review under section 24-4-106 is a final agency action, not a final agency adjudication."  *Marks*, ¶ 39.

¶ 39      We agree with the reasoning in *Marks*, and conclude that a formal adjudication was neither necessary nor required as a prerequisite to the Executive Director's final agency action.  Rather, as explained above, section 24-4-102(1) and the definition of final agency action as articulated in *Chittenden*, ¶ 26, set forth the requirements for what constitutes final agency action.

¶ 40      In any event, we note that there was a proceeding here. Section 24-4-102(13) defines "proceeding" as "any agency process

for any rule or rule-making, *order* or adjudication, or license or licensing." (Emphasis added.) As explained above, the Executive Director's November 6 letter constituted an order — an order that was issued pursuant to an agency process that Park Meadows itself began in its June 12 letter and which concluded with the Executive Director's determination that there was no basis to proceed with an investigation, issue a cease and desist order, or to take any other action against GM or Alpine.

### C. The Executive Director's August 20 Letter

¶ 41 According to Park Meadows, defendants' argument (and the district court's conclusion) that the Executive Director's November 6 letter constituted final agency action is illogical because the Executive Director had issued a nearly identical letter on August 20, and thus both letters could not have been final.[3] We disagree.

---

[3] We question whether, as Park Meadows argues, the Executive Director's August 20 and November 6 letters were "nearly identical." In the August 20 letter, the Executive Director merely concluded that Park Meadows' June 12 letter "did not include any allegation that a violation has occurred." By contrast, the November 6 letter ruled directly on the merits of Park Meadows' allegations and concluded that there was "no indication that a violation has occurred."

23

¶ 42    "[A]lthough a quasi-judicial decision may completely determine the rights of the parties and end the particular action, the existence of such a final decision, in and of itself, does not bar the quasi-judicial body from reopening the action on its own motion." *Citizens for Responsible Growth v. RCI Dev. Partners, Inc.*, 252 P.3d 1104, 1107 (Colo. 2011).  "Until judicial review is initiated or jurisdiction is divested in some other way, a quasi-judicial body is not necessarily precluded from reconsidering and superseding its own final decision." *Id.*  Nonetheless, if a quasi-judicial body is authorized to reconsider and actually reconsiders a prior decision, the earlier decision ceases to be final and "the superseding decision that ultimately ends the action . . . is subject to judicial review." *Id.*

¶ 43    In this case, the Executive Director's August 20 letter did not undermine the finality of her November 6 determination.  Park Meadows had not initiated judicial review prior to sending the Executive Director a "renewed" request on September 1 to initiate an investigation, issue a cease and desist order, or take other action against GM and Alpine.  *See* § 24-4-106(11)(b) (requiring judicial review of a final agency action to commence within forty-nine days after the date of the service of the final order).  Furthermore, forty-

24

nine days had not passed between August 20, when the Executive Director issued her first letter, and September 1, when Park Meadows sent its "renewed" request to the Executive Director. *See id.* Thus, the Executive Director retained jurisdiction over the matter and properly addressed Park Meadows' "renewed" request. *RCI*, 252 P.3d at 1107. Even if we assume that the Executive Director's August 20 decision constituted final agency action, that decision ceased to be final when she issued her November 6 decision, and the November 6 decision was then subject to judicial review.[4] *Id.*

---

[4] Alpine contends that, because Park Meadows was required to commence judicial review of the Executive Director's November 6 decision within forty-nine days of the decision, *see* § 24-4-106(11)(b), C.R.S. 2015, this court does not have jurisdiction over the appeal and must dismiss it as untimely. This contention misses the point. Although Alpine is correct that Park Meadows had forty-nine days from November 6 to file an appeal in this court, Park Meadows has never filed a direct appeal from the Executive Director's November 6 letter. Rather, here, Park Meadows appeals from the two district court orders granting the Executive Director's and Alpine's motions to dismiss, and from the district court's order denying Park Meadows' motion for reconsideration. Park Meadows timely appealed these orders, and, thus, we have jurisdiction over this matter.

D. Section 12-6-122(3)

¶ 44    Park Meadows also contends that section 12-6-122(3), which authorizes an action by a dealer for damages against a manufacturer (but not against another dealer) under certain circumstances, provided the district court with subject matter jurisdiction to resolve its claim against GM and allowed the court to disregard the jurisdictional limitations set forth in section 12-6-120.3(4)(b)(II).  Thus, Park Meadows contends that the district court erred by granting Alpine's motion to dismiss pursuant to C.R.C.P. 12(b)(1) and dismissing the case in its entirety.[5]  We disagree.

¶ 45    "In considering a motion to dismiss for lack of subject matter jurisdiction pursuant to C.R.C.P. 12(b)(1), a district court examines the substance of the claim based on the facts alleged and the relief requested."  *Barry*, ¶ 8.  Here, Park Meadows' first claim for relief against GM and Alpine sought a stay, followed by a cease and desist order, with respect to Alpine's proposed relocation, pursuant to section 12-6-120.3.  Park Meadows never sought damages under

_____

[5] Park Meadows acknowledges that section 12-6-122(3) does not authorize an action for damages against Alpine because Alpine is not a manufacturer.

26

section 12-6-122(3). We agree with the district court that, "[c]iting [section] 12-6-122(3) now, . . . cannot alter the nature of the relief sought through [Park Meadows'] Complaint." Accordingly, pursuant to section 12-6-120.3(4)(b)(II), the court of appeals retained sole jurisdiction to review the Executive Director's final agency action.

E. The Result of the Executive Director's November 6 Letter Constituting Final Agency Action

¶ 46     Having concluded that the Executive Director's November 6 letter constituted final agency action, we next determine whether the district court properly granted defendants' motions to dismiss and properly denied Park Meadows' motion for reconsideration.

¶ 47     As pertinent here, section 12-6-120.3(4)(a) provides that a licensee may bring "an action or proceeding before the executive director *or* a court pursuant to this part 1," (emphasis added), and section 12-6-120.3(4)(b)(II) provides that "[t]he court of appeals has initial jurisdiction to review all final actions and orders that are subject to judicial review of the executive director made pursuant to this subsection (4)." Because we interpret clear statutory language according to its plain and ordinary meaning, *Marks*, ¶ 26, we

27

interpret the word "or" in section 12-6-120.3(4)(a) to be used in the disjunctive sense, as applied to the facts here.[6] *Armintrout v. People*, 864 P.2d 576, 581 (Colo. 1993) ("[W]hen the word 'or' is used in a statute, it is presumed to be used in the disjunctive sense, unless legislative intent is clearly to the contrary.").

¶ 48 We conclude that the district court properly granted the Executive Director's motion to dismiss pursuant to C.R.C.P. 12(b)(1), and further did not abuse its discretion in denying Park Meadows' motion for reconsideration. *See Hytken*, 68 P.3d at 512 (stating that motions for reconsideration are addressed to the sound discretion of the trial court); *see also* C.R.C.P. 121, § 1-15(11). Park Meadows' second claim for relief, directed against the Executive Director, sought a declaration from the district court that Park Meadows had sufficiently alleged a violation of section 12-6-120.3, and sought an order pursuant to C.R.C.P. 106 compelling the Executive Director to determine whether the proposed relocation of Alpine was reasonable. However, the Executive Director had

---

[6] We need not decide whether a plaintiff who brings an action or proceeding before the Executive Director pursuant to section 12-6-120.3 and successfully demonstrates a manufacturer's violation of the statute can subsequently bring an action in the district court to recover damages for that violation.

already issued a final decision determining that, based on Park Meadows' submissions, there was no indication of any violation by GM or Alpine of the applicable statutes.  That letter constituted a final agency action, and review of the Executive Director's decision fell within the court of appeals' exclusive jurisdiction.  § 12-6-120.3(4)(b)(II).

¶ 49     Additionally, because section 12-6-120.3(4)(a) allowed Park Meadows to bring an "action or proceeding before the executive director *or* court pursuant to this part 1," (emphasis added), the district court did not err in concluding that Park Meadows was barred from bringing an additional action before the district court, *Armintrout*, 864 P.2d at 581.  Park Meadows chose to bring an initial proceeding before the Executive Director and thereafter could not bring a separate action in the district court merely because it did not receive the relief it requested.  Thus, the district court properly granted the Executive Director's motion to dismiss for lack of subject matter jurisdiction pursuant to C.R.C.P. 12(b)(1), and did not abuse its discretion by denying Park Meadows' motion for reconsideration.  *See Hytken*, 68 P.3d at 512-13.

¶ 50     We also conclude that the district court properly granted Alpine's motion to dismiss pursuant to C.R.C.P. 12(b)(1) and dismissed the case in its entirety. Like the district court, we construe Park Meadows' first claim for relief against Alpine and GM as a request for the district court to determine the reasonableness of GM's approval of Alpine's relocation. Because Park Meadows first sought this same determination through the Executive Director, the court of appeals had sole jurisdiction to review the Executive Director's decision. § 12-6-120.3(4)(b)(II). Thus, Park Meadows could not bring a proceeding or an action seeking the same relief before both the Executive Director and the district court. § 12-6-120(4)(a); *Armintrout*, 864 P.2d at 581.

## F. Miscellaneous Contentions

¶ 51     Because of our resolution of this matter, we need not address certain other miscellaneous contentions of the parties.

¶ 52     GM contends that, if the district court did have subject matter jurisdiction over Park Meadows' claims, any error by the district court was harmless because Park Meadows' claims are barred by the doctrine of issue preclusion. We need not address this

30

contention because we have concluded that the district court did not have subject matter jurisdiction over Park Meadows' claims.

¶ 53    For the first time on appeal, the Executive Director argues that it is within her discretion to take enforcement action, and that her discretionary decision not to do so here was not subject to judicial review by any court, including the court of appeals.[7]  She also argues that, because it was within her discretion to decide whether to investigate alleged violations of section 12-6-120.3, Park Meadows lacked standing to present a claim against her because it had no "injury-in-fact." *Colo. Med. Soc. v. Hickenlooper*, 2012 COA 121, ¶ 20 (citation omitted).  We do not address these arguments because we have already concluded that the November 6 letter constituted final agency action, which was the only argument made by the Executive Director in the district court and was the basis upon which the district court granted the Executive Director's motion to dismiss.

---

[7] We note that, while this appeal was pending before our court, the Colorado Supreme Court decided *Colorado Ethics Watch v. Independent Ethics Commission*, 2016 CO 21.  While *Colorado Ethics Watch* does address some arguments similar to those in our case, that case involved a constitutionally created commission and was decided on the basis of various constitutional provisions.  Thus, it is inapplicable here.

## V.   Conclusion

¶ 54   The orders are affirmed.

JUDGE KAPELKE and JUDGE NIETO concur.